**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **ELIZA BONNER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-1514 |
| | ) | |
| **SYG ASSOCIATES, INC.,** *et al.*, | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Jimmy Ghadban ("Decedent") died on February 11, 2019 without designating a beneficiary to receive the funds in a 401(k) Plan he maintained with his employer, SYG Associates, Inc. ("SYG"), pursuant to the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.* Thereafter, Decedent's third wife, Plaintiff Eliza Bonner ("Plaintiff") claimed that she was Decedent's surviving "spouse" and hence entitled to the funds in Decedent's 401(k) Plan as the default beneficiary. The 401(k) Plan Administrators, Mary Kathryn Hamill, Susan Webb, and SYG (collectively, "Defendants"), disagreed with Plaintiff's claim to be Decedent's "spouse" and declined to award Plaintiff the funds in Decedent's 401(k) Plan. Plaintiff then brought this ERISA action to recover the funds in Decedent's 401(k) Plan and for other equitable relief.

Before the completion of discovery, Defendants moved for summary judgment, arguing that Plaintiff was not entitled to the funds in Decedent's 401(k) Plan because Plaintiff was a bigamous spouse and therefore not a "spouse" within the meaning of ERISA and Decedent's 401(k) Plan. Defendants' motion for summary judgment was denied because the then-existing record was anemic as it did not reflect whether Decedent's marriage to Plaintiff was bigamous. At the time of Defendants' motion, neither party had adequately explored whether Decedent's 1993 marriage to his second wife, Martha de la Vega ("de la Vega") had ended in divorce or was still

1

valid, thereby rendering Decedent's 2001 marriage to Plaintiff bigamous and thus void *ab initio*. Accordingly, the parties were invited to search pertinent state and county records for any evidence of a divorce between Decedent and de la Vega and to supplement the record with any evidence that Decedent's marriage to de la Vega had ended in divorce.

The parties completed discovery and supplemented the record on the question as to whether Decedent's marriage to de la Vega had ended in divorce. At issue now on the merits is Plaintiff's Motion for Relief, which seeks the relief requested in the Compliant, as well as equitable relief that is not specifically requested in the Complaint. Thus, the remedies Plaintiff seeks here are:

> (1) recovery of the funds in Decedent's 401(k) Plan under ERISA § 1132(a)(1)(B) by way of an Order directing the Plan Administrators to take the necessary steps to award the funds in Decedent's 401(k) Plan to Plaintiff as Decedent's "spouse";
>
> (2) equitable relief under ERISA § 1132(a)(3), specifically (i) reformation of Decedent's 401(k) Plan to name Plaintiff as the "spouse" entitled to Decedent's 401(k) Plan and (ii) creation of a Virginia state law constructive trust to hold the funds in Decedent's 401(k) Plan in trust for the benefit of Plaintiff; and
>
> (3) statutory damages and pre-judgment interest under ERISA § 1132(c)(1) based on Defendants alleged failure to provide Plaintiff with Plan documents, as well as payment of attorneys' fees under ERISA § 1132(g)(1).

Defendants object to all three forms of relief, as they contend that the supplemented record discloses no evidence of a divorce between Decedent and de la Vega. The questions presented by Plaintiff's Motion for Relief have been fully briefed and argued, including oral argument held on August 21, 2020. Accordingly, the questions presented by Plaintiff's Motion for Relief are now ripe for disposition on the merits.[1]

---

[1] Appropriately, neither Plaintiff nor Defendants requested a jury trial on Plaintiff's claims, as there is no right to a jury trial in ERISA cases seeking recovery of plan benefits under ERISA § 1132(a)(1)(B) or equitable relief under ERISA § 1132(a)(3). *See Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 222 (4th Cir. 2005). Nor has either party contended that it would be premature to decide this matter in light of the parties' clear failure to comply with the Plan's grievance procedures for denial of a claim for plan benefits. *See Makar v. Health Care Corp. of the Mid-Atlantic*, 872 F.2d 80, 82–83 (4th Cir. 1989) (discussing requirement of exhaustion of plan remedies); *see also* Plan at 95–96 (Dkt. 10-4) (section titled "Claims Procedures").

**I.**

The facts recited in the following indented bullets are derived from the record in this case and are not disputed.

- Decedent resided in Prince William County, Virginia from the early 1990s until his death on February 11, 2019.

- Plaintiff is putatively Decedent's third wife.

- Defendant SYG is a Virginia company that was owned by Decedent while he was alive.

- Defendants Hamill and Webb are Decedent's daughters from his first marriage and are also employees of SYG.

- Decedent created and funded a 401(k) Plan ("Decedent's 401(k) Plan") with SYG. Decedent's 401(k) Plan is governed by the terms of SYG's Flexible 401(k) Profit Sharing Plan ("Plan").

- It is undisputed that Decedent never designated a beneficiary to receive the funds in Decedent's 401(k) Plan. It is also undisputed that, in the absence of a named beneficiary, the funds in Decedent's 401(k) Plan must go to Decedent's "spouse" and that the Plan's definition of "spouse" incorporates Virginia law's definition of "spouse."

- As of December 18, 2019, the value of Decedent's 401(k) Plan was $721,916.88.

- The Plan designates SYG as the Plan Administrator of the Plan. Upon Decedent's death, Hamill and Webb served as additional Plan Administrators of the Plan and Decedent's 401(k) Plan.

- Decedent's first wife was Brenda Alexander. Hamill and Webb are issue of Decedent's marriage to Alexander. Decedent's marriage to Alexander ended in the entry of divorce decree in Prince William County, Virginia in 1987.

- On March 5, 1993, Decedent and de la Vega were married in the Commonwealth of Virginia in a ceremony officiated by Thomas E. Davis.

- On March 14, 2001, Decedent and Plaintiff were married in the state of Hawaii in a ceremony officiated by Reverend John Souter. Two days prior to the marriage, Decedent and Plaintiff completed a State of Hawaii Marriage License Worksheet and a State of Hawaii Marriage License Application. Both documents indicate (1) that Decedent's marriage to Plaintiff was Decedent's second marriage and (2) that Decedent had obtained a divorce from his first wife in 1987 in Prince William County, Virginia.

- As of March 14, 2001, Plaintiff knew that, from approximately 1990 to 1994, Decedent

- and de la Vega lived together in a house on Burwell Road in Nokesville, VA. Plaintiff and Decedent lived together in a house on Burwell Road in Nokesville, VA from approximately 1995 to 2003, at which time Plaintiff and Decedent moved to a different house in Nokesville, VA.

- In 2005, de la Vega moved from Virginia to Pima County, Arizona. De la Vega has lived in Pima County, Arizona from 2005 to the present day.

- The Commonwealth of Virginia Department of Health, Division of Vital Records has no record of any divorce between Decedent and de la Vega from the date of their marriage through Decedent's date of death.

- No Superior Court in Arizona has a record of a divorce between Decedent and de la Vega at any time from the date of their marriage through Decedent's date of death.

- Neither party contends that the state of Hawaii has a record of a divorce between Decedent and de la Vega.

- De la Vega has not filed for divorce from Decedent in any state, nor has she learned, from any source, that Decedent ever filed for divorce from her in any state.

- At some point after Decedent's death on February 11, 2019 but prior to Decedent's funeral later in February 2019, Plaintiff informed Webb and Hamill that, in 2016, Decedent changed the beneficiary on Decedent's $150,000 life insurance policy from Webb and Hamill to Plaintiff. Webb and Hamill were not aware of the change to Decedent's life insurance policy until Plaintiff informed them of the change in February 2019. After hearing about the change to Decedent's life insurance policy, Hamill and Webb asked Plaintiff to make a gift of $150,000 to SYG, as SYG at that time was nearing insolvency. Plaintiff declined to do so.

- At some point in February 2019, Hamill, Webb, and Plaintiff all purportedly learned that Decedent had never divorced from de la Vega. Plaintiff further asserts that she was completely unaware of Decedent's marriage to de la Vega until February 2019. Hamill and Webb have always known about Decedent's marriage to de la Vega.

- At some point in March 2019, Plaintiff, claiming to be Decedent's "spouse," completed her sections of a 401(k) Distribution Due to Death form and had the Executor of Decedent's estate deliver the Distribution Form to Webb. Defendants refused to complete the remaining sections of the 401(k) Distribution Form. Defendants also refused to take steps to transfer the funds in Decedent's 401(k) Plan to a bank account in Plaintiff's name.

- Plaintiff asserts that Decedent, while he was alive, told Plaintiff orally that Plaintiff would receive the funds in Decedent's 401(k) Plan in the event of Decedent's death.

- At some point in March or April 2019, Hamill, Webb, and defense counsel contacted de la Vega by telephone and encouraged de la Vega to make a claim to the funds in Decedent's

4

    401(k) Plan. At the time of the telephone call, de la Vega was not aware that Decedent had a 401(k) Plan with SYG.

- In the months following this telephone call, Hamill, Webb, and defense counsel remained in contact with de la Vega and discussed distribution of the funds in Decedent's 401(k) Plan. On December 20, 2019, de la Vega, claiming to be Decedent's spouse, completed a 401(k) Distribution Due to Death form and sent the form to Defendants.

Although there is no dispute as to the foregoing facts, there is a dispute about whether Hamill, Webb, and de la Vega reached an agreement in which de la Vega, were she to succeed in her claim to the funds in Decedent's 401(k) Plan, would share a portion of the funds in Decedent's 401(k) Plan with Hamill and Webb. Specifically,

- Plaintiff claims that Hamill, Webb, and defense counsel convinced de la Vega to share with Hamill and Webb an unspecified portion of the funds in Decedent's 401(k) Plan as a reward to Hamill and Webb for informing de la Vega that she was eligible to inherit the funds Decedent's 401(k) Plan as Decedent's "spouse."

- Defendants dispute this, arguing that there is no written agreement between Hamill, Webb, and de la Vega to share the funds in Decedent's 401(k) Plan in the event de la Vega is awarded the funds. Defendants contend that de la Vega agreed only to make a gift of some portion of the funds in Decedent's 401(k) Plan to Hamill and Webb.

- It appears from de la Vega's deposition testimony that de la Vega agreed to share some portion of the funds in Decedent's 401(k) Plan with Hamill and Webb in the event de la Vega is awarded the funds. But de la Vega's deposition does not reflect that de la Vega entered into any binding contract requiring de la Vega to share any portion of the funds in Decedent's 401(k) Plan with Hamill and Webb. Nor does de la Vega's deposition testimony reflect that de la Vega agreed to share a specific amount of the funds in Decedent's 401(k) Plan with Hamill and Webb.

## II.

Because Decedent died without naming a beneficiary to receive the funds in Decedent's 401(k) Plan, analysis of Plaintiff's claim to those funds properly begins with the pertinent Plan provision regarding what should occur in the absence of a named beneficiary.[2] In this regard,

---

[2] *See Metro Life Ins. Co. v. Parker*, 436 F.3d 1109, 1116 (9th Cir. 2006) ("When a plan participant fails to identify a beneficiary, we must turn to the governing plan documents to ascertain the default beneficiary."); *Kinder Morgan, Inc. v. Crout*, 814 F. App'x 811, 818 (5th Cir. 2020) (same).

5

Section 5.03 of the Plan, titled *Distributions Upon the Death of a Participant* ("Distributions Provision") makes clear that, upon the death of a Plan participant and in the absence of a named beneficiary, Plan benefits must go to the Plan participant's "spouse." This is evident from the plain text of the Plan's Distributions Provision, which states that: "[a] deceased Participant's Individual Account will be payable to any surviving Beneficiary designated by the Participant, or, if no Beneficiary survives the Participant, to the Participant's Spouse." Plan at 91.

In this case, application of the Distributions Provision compels the conclusion that the funds in Decedent's 401(k) Plan must go to Decedent's "spouse." This is so because the record clearly shows that Decedent did not designate a beneficiary to receive the funds in Decedent's 401(k) Plan, thereby by default making Decedent's "spouse" the beneficiary of the funds. Therefore, analysis of Plaintiff's claim to the funds in Decedent's 401(k) Plan requires answering a single question: is Plaintiff Decedent's spouse? If Plaintiff is Decedent's "spouse," then Plaintiff has a claim to the funds in Decedent's 401(k) Plan pursuant to ERISA § 1132(a)(1)(B). If Plaintiff is not Decedent's "spouse," then Plaintiff has no claim to the funds in Decedent's 401(k) Plan pursuant to ERISA § 1132(a)(1)(B).

Although this much is clear from the Plan, the Plan's definition of "spouse"[3] does not specifically address the question presented here, namely, whether the Plan's use of the term "spouse" includes or excludes a bigamous spouse. In this regard, the parties sensibly agree that pertinent state law—in this case, Virginia law—controls whether the term "spouse" in the Plan includes or excludes a bigamous spouse.[4] The parties also agree that Virginia does not recognize

---

[3] The Plan's definition of "spouse" concerns a circumstance in which a plan participant divorces his or her spouse pursuant to a Qualified Domestic Relations Order. *See* Plan at 55. Because this case does not involve a Qualified Domestic Relations Order, the Plan's definition of "spouse" is not helpful in resolving the issues at hand.

[4] Federal courts in ERISA cases have consistently applied state law to determine whether a bigamous spouse is entitled to plan benefits. *See, e.g.*, *Crosby v. Crosby*, 986 F.2d 79, 81–83 (4th Cir. 1993) (affirming district court in ERISA

6

"bigamous marriages," defined under Virginia law as any marriage where one of the parties to the marriage was previously married and the previous marriage had not ended in death or divorce as of the date of the later marriage. *See, e.g.*, Va. Code §§ 20-38.1, 20-43; *Hager v. Hager*, 3 Va. App. 415, 416 (1986); *Grove*, 271 F.2d at 919.[5] Accordingly, if Decedent's 1993 marriage to de la Vega did not end in divorce as of the date of Decedent's 2001 marriage to Plaintiff, then Plaintiff's marriage to Decedent was bigamous and consequently Plaintiff is not the "spouse" entitled to the funds in Decedent's 401(k) Plan.

Defendants have the burden of proving that Decedent's marriage to de la Vega did not end in divorce. This is so because re-marriage is common and therefore there is a strong evidentiary presumption in Virginia that a previously married person obtained a divorce from their former spouse before marrying again, thereby making the later-in-time marriage valid. *See DeRyder v. Metro. Life Ins. Co.*, 206 Va. 602, 604–05 (1965); *see also Hewitt*, 490 F. Supp. at 1362. The evidentiary presumption that the earlier-in-time marriage ended in divorce is a "rebuttable presumption" and therefore may be rebutted by contrary evidence. *Parker v. Am. Lumber Corp.*,

---

case applying Maryland's definition of marriage to interpret the term "qualified beneficiary"); *Hill v. Bell / Rozelle NFL Player Ret. Plan*, 548 F. App'x 55, 57 (3rd Cir. 2013) (applying South Carolina's definition of marriage to interpret the term "surviving spouse" in an ERISA plan); *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 928 (6th Cir. 2006) (applying Ohio's definition of marriage to interpret the term "surviving spouse" in an ERISA plan); 26 C.F.R. § 1.401(a)(9)–8 (the term "spouse" in a 401(k) plan means "spouse or surviving spouse . . .. [a]s treated . . . under applicable state law").

Because all the parties in this case are Virginia residents, the parties have assumed that Virginia law applies and have never addressed the possibility that another states' law provides the definition of "spouse." Ultimately, it is appropriate to apply Virginia law here, as the decision to apply Virginia law comports with the parties' expectations and is consistent with the outcome in a handful of circuit cases about bigamous marriages. *See DaimlerChrysler*, 448 F.3d at 922–28 (applying the law of the state where the parties resided for the duration of the marriage (there, Ohio) instead of the law of the state listed in the plan choice of law provision (there, Michigan) or the law of the state where the bigamous marriage occurred (there, Nevada)); *Brinson v. Brinson*, 334 F.2d 155, 158 (4th Cir. 1965) (applying law of the decedent's domicile); *Grove v. Metro. Life Ins. Grp. Co.*, 271 F.2d 918, 919 (4th Cir. 1959) (same).

[5] Consistent with Virginia's non-recognition of bigamous marriages, Virginia courts have consistently held that the parties to a bigamous marriage are not entitled to spousal rights, such as the right of inheritance. *See Chitwood v. Prudential Ins. Co. of Am.*, 206 Va. 314, 318 (1965); *Woolery v. Metro. Life Ins. Co.*, 406 F. Supp. 641, 644 (E.D. Va. 1976); *Hewitt v. Firestone Tire & Rubber Co.*, 490 F. Supp. 1358, 1361 (E.D. Va. 1980).

190 Va. 181, 186 (1949); *DeRyder*, 206 Va. at 604–05. Specifically, the party seeking to invalidate a later-in-time marriage as bigamous may rebut the presumption that the earlier-in-time marriage ended in divorce by adducing clear and convincing evidence that there is no record of a divorce decree for the earlier-in-time marriage (1) "in jurisdictions where the parties resided" or (2) "where on any reasonable basis a decree might have been obtained." *Hewitt*, 490 F. Supp. at 1365; *Woolery*, 406 F. Supp. at 644; *Rahnema v. Rahnema*, 47 Va. App. 645, 664–65 (2006) (requiring clear and convincing evidence to rebut the presumption that the earlier-in-time marriage ended in divorce). But importantly, to rebut the presumption of divorce, it is not necessary to document the absence of a divorce decree in every jurisdiction where a divorce "could possibly have been obtained," for if that were the case then the rebuttable presumption "would not be rebuttable, but effectively irrebuttable." *Hewitt*, 490 F. Supp. at 1365; *see also Parker* 190 Va. at 186–87; *Woolery*, 406 F. Supp. at 644.

Here, Defendants have successfully rebutted the presumption that Decedent's earlier-in-time marriage to de la Vega ended in divorce. This is so because the undisputed facts establish (1) that no divorce was ever entered in any jurisdiction where de la Vega or Decedent resided and (2) that there are no other jurisdictions where on any reasonable basis a decree might have been obtained. Neither Virginia, Decedent's lifelong state of residence, nor Arizona, de la Vega's state of residence after she left Virginia, has any record of a divorce between them from the date of their marriage through January 31, 2020. Additionally, there are no other jurisdictions where on any reasonable basis a divorce decree might have been obtained. In this regard, no record of divorce was found in Hawaii and further, Plaintiff's half-hearted suggestion in a footnote that Decedent might have obtained a divorce while vacationing in another state or country ignores well-

established residency requirements that forecloses this remote possibility.[6] In short, the parties have spent five months in discovery looking for a record of divorce between Decedent and de la Vega but have not found any such record. Accordingly, Defendants have made the requisite clear and convincing showing on this record to rebut the presumption that Decedent's earlier-in-time marriage to de la Vega ended in divorce.

Seeking to avoid this conclusion, Plaintiff cites four out-of-circuit district court cases in which the party seeking to invalidate the later-in-time marriage on the ground of bigamy failed to establish that the earlier-in-time marriage did not end in divorce. None of these cases is applicable here because in each of these cases the party seeking to invalidate the later-in-time marriage offered far less evidence that the earlier-in-time marriage did not end in divorce.[7] Moreover, Plaintiff's citation to these cases overlooks federal appellate decisions that have declined to award ERISA benefits to a bigamous spouse. *See Crosby*, 986 F.2d at 81; *Hill*, 548 F. App'x at 57; *DaimlerChrysler Corp.*, 448 F.3d at 928.[8]

---

[6] Divorce decrees cannot be obtained while traveling because virtually all states require the party filing for divorce to be a resident of the state in which the action for divorce is filed. *See, e.g.*, *Sosna v. Iowa*, 419 U.S. 393, 404–05 (1975) ("The imposition of a durational residency requirement for divorce is scarcely unique to Iowa, since 48 States impose such a requirement . . . [with] the periods vary[ing] among the States and rang[ing] from six weeks to two years.").

[7] In each of the four cases, the evidence offered to invalidate the allegedly bigamous marriage was clearly insufficient. First, in *Roofers Local 149 Pension Fund v. Pack*, No. 2:19-cv-10628, 2020 WL 2526091, at *6 (E.D. Mich. May 18, 2020), the allegedly bigamous marriage was not invalidated because the only evidence adduced to invalidate the later-in-time marriage was the earlier-in-time spouse's deposition testimony that "he was still married to me." Second, in *Teamsters Local 639 Empr' Pension Tr. v. Johnson*, No. 91-cv-1545, 1992 WL 200075, at *8 (D.D.C. July 28, 1992), the allegedly bigamous marriage was not invalidated because the parties had not searched for evidence of a divorce in Virginia and Indiana—states where the decedent had lived for a total of fifteen years. Third, in *Barnett v. Metro. Life Ins*, No. 94-cv-70627, 1995 WL 871197, at *5 (E.D. Mich. Apr. 28, 1995), the allegedly bigamous marriage was not invalidated because the earlier-in-time spouse ignored the lawsuit and therefore did not testify regarding the status of the earlier-in-time marriage. Further, the parties' search of divorce records there did not cover the full relevant time period or all relevant jurisdictions, notably Alabama. *See id.* at *1 n.6. Finally, in *Metro. Life Ins. Co. v. Hardin*, 23 F. Supp. 2d 934, 938 (S.D. Ind. 1998), the earlier-in-time spouse signed a document claiming that she and the decedent had divorced.

[8] Both the Third Circuit in *Hill* and the Sixth Circuit in *DaimlerChrysler Corp.* declined to award ERISA benefits to a bigamous spouse. *See Hill*, 548 F. App'x at 57; *see also DaimlerChrysler Corp.*, 448 F.3d at 928. Similarly, the Fourth Circuit in *Crosby* determined that, as between two spouses, the decedent's first spouse was entitled to the

In sum, on this record, Defendants have rebutted the presumption that Decedent's earlier-in-time marriage to de la Vega ended in divorce, thereby making Plaintiff's marriage to Decedent bigamous and Plaintiff not the "spouse" entitled to the funds in Decedent's 401(k) Plan under the Plan's terms. Although the result in this case may appear inequitable because Plaintiff and Decedent's bigamous marriage lasted 18 years, this does not alter the fact that the law makes clear that the funds in Decedent's 401(k) Plan cannot go to a bigamous spouse. *Crosby*, 986 F.2d at 84–85 (declining to award unpaid ERISA benefits to bigamous spouse of 21 years); *Hill*, 548 F. App'x at 57 (declining to award ERISA benefits to bigamous spouse of 16 years); *DaimlerChrysler Corp.*, 448 F.3d at 928 (declining to award ERISA benefits to bigamous spouse of 18 years). Nor is this conclusion altered by the argument that under Virginia law Plaintiff's marriage to Decedent was presumptively valid; that presumption has also been successfully rebutted because Defendants have established that, on this record, Decedent's marriage to de la Vega did not end in divorce. Accordingly, Plaintiff's claim for recovery of the funds in Decedent's 401(k) Plan under ERISA § 1132(a)(1)(B) must be denied on this record.

### III.

Although Plaintiff is not entitled to recovery of Plan benefits under ERISA § 1132(a)(1)(B), that does not end the analysis. This is so because a plaintiff may seek "appropriate equitable relief" under ERISA § 1132(a)(3) if no other ERISA provision provides a remedy. *See Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 385 (4th Cir. 2001); *see also Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).[9] Accordingly, it is necessary to consider

---

decedent's Survivor Income Benefit Insurance ("SIBI") funds, with an exception for SIBI funds that the plan administrator had paid out to the decedent's bigamous second spouse before the first spouse came forward with a claim. *See id.* at 84–85. The Fourth Circuit chose not to claw-back 401(k) funds already paid to the bigamous spouse, noting that the plan administrator made a "good faith" (though erroneous) decision that the bigamous spouse was entitled to the 401(k) funds. *See id.* at 83.

[9] To be sure, Plaintiff's Complaint seeks "other relief," but does not specifically request "equitable relief." It is

10

Plaintiff's claims for equitable relief under ERISA § 1132(a)(3) in the form of (1) reformation of the Plan and (2) creation of a constructive trust.

Analysis of a claim for equitable relief properly begins with the text of ERISA § 1132(a)(3), which states in relevant part that a plan beneficiary may obtain "appropriate equitable relief" in order to redress an "act or practice which violates any . . . [ERISA] provision or the terms of the plan." ERISA § 1132(a)(3). Guided by the text of ERISA § 1132(a)(3), the Fourth Circuit has sensibly required a plaintiff seeking equitable relief to establish two elements: (1) an act or practice that violates an ERISA or plan provision; and (2) entitlement to a specific form of "equitable relief" that has been deemed "appropriate." *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 363 (4th Cir. 2015); *Moon v. BWX Tech., Inc.*, 577 F. App'x 224, 228 (4th Cir. 2014) (citing *U.S. Airways, Inc. v. McCutchen*, 549 U.S. 88, 100 (2013)). Failure to establish one of the two elements is fatal to a claim for equitable relief. *See, e.g.*, *Moon*, 577 F. App'x at 232–33.

### A.

With respect to the first element of Plaintiff's claim for equitable relief, Plaintiff's Motion for Relief alleges that the following acts and practices warrant equitable relief.

(1) Plaintiff's devotion to Decedent, de la Vega's purported abandonment of Decedent, and Decedent's oral statements to Plaintiff about Decedent's 401(k) Plan;

(2) Decedent's failure to inform Plaintiff that he had married (and not divorced) de la Vega;

(3) Hamill and Webb's failure to inform Plaintiff that Decedent had married (and not divorced) de la Vega;

(4) Hamill and Webb's decision to contact and inform de la Vega that de la Vega could make a claim to the funds in Decedent's 401(k) Plan as Decedent's "spouse"; and

(5) Hamill and Webb's purported agreement with de la Vega in which de la Vega agreed

---

nonetheless appropriate to consider Plaintiff's claim for "equitable relief" here because district courts have wide discretion under Rule 54(c), Fed. R. Civ. P. to consider remedies that are not specifically requested in the Complaint. *See* Rule 54(c), Fed. R. Civ. P.; *see also Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 65–66 (1978); *Atl. Purchaser, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 717 (4th Cir. 1983).

11

to gift an unspecified portion of the funds in Decedent's 401(k) Plan to Hamill and Webb. Clearly, none of the five above-listed acts and practices alleges a violation of a specific ERISA or Plan provision. Indeed, the first claim cannot possibly be construed as alleging a violation of an ERISA or Plan provision.[10] The remaining four claims do not expressly allege a violation of an ERISA or Plan provision and therefore must also fail in this respect. However, claims two through five are considered in further detail below because Plaintiff appears to allege that such acts and practices violate ERISA's fiduciary duty provisions. *See* ERISA § 1101, *et seq.* In this regard, it is important to set forth why claims two through five are inadequate and provide no basis for the equitable relief sought here.

To begin with, Decedent did not breach any fiduciary duty by failing to disclose the fact that he had married (and not divorced) de la Vega. This is so because a claim for breach of fiduciary duty is a claim against someone who is actually a plan fiduciary. *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60–61 (4th Cir. 1992) ("Before one can conclude that a fiduciary duty has been violated, it must be established that the party charged with the breach meets the statutory definition of 'fiduciary'"). In this regard, there are two types of plan fiduciaries: named fiduciaries and functional fiduciaries. *See Dawson-Murdock v. Nat'l Counseling Grp.*, 931 F.3d 269, 275–76 (4th Cir. 2019). Decedent was neither. Decedent was not

---

[10] The only provision Plaintiff cites in favor of this claim is Virginia's marital abandonment statute, Va. Code § 64.2-308, which is clearly not an ERISA or Plan provision. Moreover, any claim based on Virginia's marital abandonment statute necessarily must fail because ERISA pre-empts the application of state law statutes that disinherit a former spouse. *See, e.g., Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) (holding that ERISA § 1144(a) pre-empted a Washington state statute that would revoke a plan beneficiary's choice to name a former spouse as a beneficiary). Additionally, Plaintiff's recollection of what Decedent purportedly may have orally told her about Decedent's 401(k) Plan does not pertain to a violation of an ERISA or Plan provision. These oral statements are further untestable and inadmissible as evidence. *See, e.g.*, *Virginia Nat. Bank v. U.S.*, 443 F.2d 1030, 1034 (4th Cir. 1971) (explaining that parol evidence is inadmissible to interpret a will unless the "meaning of the language" used by the testator is ambiguous, and that even where the language is ambiguous, evidence of the "testator's actual intention, such as his declaration[] of intention" is inadmissible).

a named fiduciary because he is not expressly "named [] in the plan documents" as the § 1102(a) plan fiduciary. *Dawson-Murdock.*, 931 F.3d at 275 (citing 29 U.S.C. § 1102(a)); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 352 (4th Cir. 2014).[11] Nor was Decedent a functional fiduciary because there is no allegation that Decedent "perform[ed] specified discretionary functions with respect to management, assets, or administration of a plan." *Dawson-Murdock*, 931 F.3d at 276 (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996)). Accordingly, Plaintiff has no claim for an equitable remedy based on Decedent's failure to disclose the fact that he had married (and not divorced) de la Vega.

Similarly, Hamill and Webb did not breach any fiduciary duty by failing to disclose the fact that Decedent had married (and not divorced) de la Vega. This is so because Hamill and Webb were not Plan Administrators at the time Plaintiff was allegedly unaware of Decedent's marriage to de la Vega.[12] Specifically, Hamill and Webb were not Plan Administrators during the pre-February 2019 period in which Plaintiff claims she was unaware of Decedent's marriage to de la Vega; Hamill and Webb became Plan Administrators only upon Decedent's death in February 2019, the same month Plaintiff claims to have learned about Decedent's marriage to de la Vega. As for the non-disclosure of Decedent's failure to divorce de la Vega, the record is clear that no party knew about the absence of a divorce until February 2019. Indeed, the parties had to undertake significant efforts in this case to resolve this question. Accordingly, Plaintiff has no

---

[11] Identification of the named fiduciary is "focused with a degree of certainty" and here, the named fiduciary is the "Adopting Employer" (SYG). Plan at 32, 38; *Tatum*, 761 F.3d at 352. Although Decedent signed the Plan documents on behalf of SYG and is listed in the Plan documents as a "Limited Trustee," Decedent was appointed as Limited Trustee "solely for the purposes of ensuring the timely collection and deposit of Employer Contributions" and was "under no duty to take any action other than [those] express responsibilities." Plan at 30, 119.

[12] In this respect, ERISA makes clear that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty . . . if such breach was committed before [the Plan Administrator] became a fiduciary . . .." 29 U.S.C. § 1109(b); *Trigon Ins. Co. v. Columbia Naples Capital, LLC*, 235 F. Supp. 2d 495, 505 (E.D. Va. 2002).

claim for an equitable remedy based on Hamill and Webb's failure to disclose the fact that Decedent had married (and not divorced) de la Vega.

Next, Hamill and Webb did not breach any fiduciary duty by contacting and informing de la Vega that de la Vega could claim the funds in Decedent's 401(k) Plan as Decedent's "spouse." This is so because the Supreme Court has made clear that plan administrators must "take steps to identify all participants and beneficiaries . . . [and] make them aware of their status and rights under [an ERISA plan]." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 574 (1985). Similarly, the Fourth Circuit has also made clear that plan administrators have a "duty to [] inform [plan] beneficiar[ies] of material facts in the absence of a specific request for information." *Griggs*, 237 F.3d at 381; *Dawson-Murdock*, 931 F.3d at 279. Accordingly, Plaintiff has no claim for an equitable remedy based on Hamill and Webb's decision to contact and inform de la Vega that de la Vega could make a claim to the funds in Decedent's 401(k) Plan as Decedent's "spouse."

Finally, although Hamill and Webb breached a fiduciary duty to de la Vega by entering into an agreement with de la Vega to share the funds in Decedent's 401(k) Plan,[13] this breach does not impact or harm Plaintiff, as Plaintiff has no claim to the funds in Decedent's 401(k) Plan. In this respect, it makes no difference to Plaintiff whether de la Vega gives some portion of the funds

---

[13] Hamill and Webb breached several of their fiduciary duties by asking de la Vega to share the funds in Decedent's 401(k) Plan. Specifically, Hamill and Webb breached (1) the prohibition against self-dealing (29 U.S.C. § 1106(b)(1)), (2) the prohibition against receiving plan funds (29 U.S.C. § 1106(b)(3)), and (3) the duty to act "solely in the interest of the participants and beneficiaries." *Chao v. Malkani*, 452 F.3d 290, 294 (4th Cir. 2006). Under no circumstance is it appropriate for plan administrators to encourage, pressure, or ask a 401(k) beneficiary to share 401(k) plan funds with the plan administrators as a "reward" to the plan administrators. Such behavior violates a fundamental tenet of the duty of loyalty—the requirement that a fiduciary put aside any selfish motive and act solely for the benefit of the beneficiary. *See Chao*, 452 F.3d at 294. Because plan administrators may be removed for "repeated or substantial violations of their fiduciary duties," Hamill and Webb will be ordered to show cause as to why they should not be removed as the 401(k) Plan Administrators. *See Chao*, 452 F.3d at 294; *see also Acosta v. WH Adm'rs, Inc.*, 449 F. Supp. 3d 506, 520–21 (D. Md. 2020). A separate Order will issue making clear that Defendants must show cause as to why Hamill and Webb should not be removed as the 401(k) Plan Administrators. Of course, Defendants may notify the Court in writing that a new 401(k) Plan Administrator has been appointed.

14

in Decedent's 401(k) Plan to Hamill and Webb or keeps the entirety of the $721,916.88 in Decedent's 401(k) Plan. Put differently, the cause of Plaintiff having no claim to the funds in Decedent's 401(k) Plan is not some agreement on how the funds might be used; rather, the cause of Plaintiff having no claim is the fact that Plaintiff's marriage to Decedent was bigamous. *See, e.g.*, *Plasters' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 217 (4th Cir. 2011) (quoting *Allison v. Bank One—Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002)) ("a breach of an ERISA fiduciary's duties . . . [requires] 'some causal link between the alleged breach . . and the loss Plaintiff seeks to recover'"). Accordingly, Plaintiff has no claim for an equitable remedy based on this breach of fiduciary duty.

**B.**

Because Plaintiff has not established a pre-requisite violation of an ERISA or Plan provision, Plaintiff has no claim for equitable relief and there is no need to consider the second element of a claim under ERISA § 1132(a)(3). *See, e.g.*, *Moon*, 577 App'x at 232–33. Nonetheless, Plaintiff's claim that she is entitled to reformation of the Plan or creation of a constructive trust is addressed below, as existing precedent and the facts of this case make clear that Plaintiff is not entitled to such relief.

As necessary background, district courts may ordinarily award equitable relief under ERISA § 1132(a)(3) provided that the form of equitable relief requested is "appropriate." *Damiano v. Inst. For In Vitro Sci.*, 799 F. App'x 186, 187 (4th Cir. 2020) (quoting *CIGNA v. Amara*, 563 U.S. 421, 439 (2011)). A form of equitable relief is "appropriate" if it was "typically available in equity" prior to the merger of law and equity. *Id.* Although the remedies of reformation and constructive trust fall into this category, the fact that an equitable remedy is permissible does not make it mandatory. *See Cross*, 329 F. App'x at 455; *Moon*, 577 App'x at

15

232–33; *Damiano*, 799 F. App'x at 188. District courts must look to the law governing the precise form of relief requested to determine whether the precise form of equitable relief requested is appropriate in a given case, as there is no overarching standard under ERISA § 1132(a)(3) for measuring harm or equities. *See Damiano*, 799 F. App'x at 187. Accordingly, it is necessary to provide a brief overview of the remedies of reformation and constructive trust.

The Fourth Circuit has made clear that the remedy of reformation is a "limited" remedy in contract that permits a district court to reform the terms of an ERISA plan to correct a "mistake" in the ERISA plan due to inadvertence by both contracting parties or fraud by one of the contracting parties. *Cross*, 329 F. App'x at 454 (citing *Audio Fidelity Corp v. Pension Benefit Guaranty Corp.*, 624 F.2d 513, 518 (4th Cir. 1980)); *Amara*, 563 U.S. at 443; *id.* at 449 (Scalia, J., concurring) (quoting 27 R. Lord, *Williston on Contracts* § 69:55, p. 160 (4th Ed. 2003)). To obtain reformation under ERISA § 1132(a)(3), the party seeking reformation must therefore present clear and convincing evidence of a bilateral mistake due to inadvertence or a unilateral mistake accompanied by fraud on the part of a contracting party. *Cross*, 329 F. App'x at 454 (citing *Restatement (Second) of Contracts* §§ 152, 155 (1979)). The Fourth Circuit has considered reformation under ERISA § 1132(a)(3) on at least five occasions, each time declining the request.[14] Nothing in these five cases suggests that reformation is appropriate where, as here, the basis for reformation is alleged fraud taking place apart from and after the creation of the Plan and the only party harmed by the alleged fraud is a party who did not participate in the negotiation of the

---

[14] *See Cross*, 329 F. App'x at 455 (declining to reform plan due to alleged scrivener's error); *Moon*, 577 F. App'x at 233 (declining to address reformation because plaintiff had not alleged a violation of ERISA); *Audio Fidelity*, 624 F.2d at 517–18 (declining to reform plan due to the absence of a bilateral or unilateral mistake); *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 643 (4th Cir. 2007) (declining to reform plan and noting that reformation "undercut[s] important fundamental aims of ERISA . . . [and] fosters uncertainty about employee benefits"), *abrogated on other ground by*, 609 F.3d 622, 630 (4th Cir. 2010); *Wilson v. Bluefield Supply Co.*, 819 F.2d 457, 460 (4th Cir. 1987) (denying plaintiff's claim to reform the plan so that it resembled a prior version of the plan).

"mistaken" Plan term.

The remedy of constructive trust under ERISA § 1132(a)(3) incorporates the elements of a claim for constructive trust under the relevant state law. *See Pender*, 788 F.3d at 368–69.[15] Under Virginia law, a constructive trust is "an equitable remedy which is created by operation of law to prevent a fraud or injustice." *Bank of Hampton Roads v. Powell*, 292 Va. 10, 15 (2016); *Faulknier v. Shafer*, 264 Va. 210, 215 (2002). A constructive trust may not be imposed unless the party seeking creation of a constructive trust puts forth clear and convincing evidence of an "interest" in the "action, fund, or other property which is to be made the subject of the trust." *Powell*, 292 Va. 15. In this regard, bigamous marriages "confer[] no legal rights" on the parties to the marriage. *Chitwood*, 206 Va. at 318; *Martian v. Berryhill*, No. 1:18-cv-12, 2018 WL 4572715, *9 (E.D. Va. Aug. 30, 2018) (same).

The above principles, applied to the facts of this case, make clear that neither reformation nor a constructive trust is appropriate here. To begin with, the nature of Plaintiff's request for equitable relief does not readily fit into the doctrines of reformation or constructive trust as articulated above. Second and most importantly, a federal court determining an ERISA issue does not sit as a family court to decide who among two spouses is more deserving of an award of benefits; the role of a federal court is to apply ERISA and to remedy violations of ERISA or violations of plan provisions, neither of which exists here. *See Pender*, 788 F.3d at 363; *see also Moon*, 577 F. App'x at 228. Third, there is nothing plainly inequitable about denying ERISA benefits to a bigamous spouse, as evidenced by at least three federal circuit courts that have done

---

[15] Although the Fourth Circuit has previously held that ERISA pre-empts state law constructive trusts, *see Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 862 (4th Cir. 1998), the Fourth Circuit, in recent years, has permitted creation of a state law constructive trust under ERISA § 1132(a)(3) and has drawn a distinction in the pre-emption doctrine that would allow equitable relief of this kind after plan benefits have been distributed. *See Pender*, 788 F.3d at 368–69; *see also Andochick v. Byrd*, 709 F.3d 296, 300 (4th Cir. 2013).

so. *See Crosby*, 986 F.2d at 81; *Hill*, 548 F. App'x at 57; *DaimlerChrysler*, 448 F.3d at 928. Fourth, Plaintiff has not cited any cases in which a court awarded equitable relief to a bigamous spouse specifically under ERISA § 1132(a)(3); the cases she cites on ERISA § 1132(a)(3) concern run-of-the mill disputes regarding spousal inheritance.[16] Accordingly, neither reformation nor creation of a constructive trust is appropriate on the record presented here.

## IV.

Plaintiff also seeks statutory damages and prejudgment interest under ERISA § 1132(c)(1) and attorneys' fees under ERISA § 1132(g)(1). Defendants have also made a request for attorneys' fees under ERISA § 1132(g)(1). None of this relief is appropriate here, for either party.

Statutory damages under ERISA § 1132(c)(1) for failure to provide plan documents are discretionary and appropriate only where the plan participant or beneficiary does not receive plan documents after making a request for plan documents. ERISA § 1132(c)(1); *Mullins v. A.T.& T. Corp.*, 424 F. App'x 217, 225 (4th Cir. 2011). Here, Plaintiff has not adduced any evidence that she made a request for plan documents that was refused. *Mullins*, 424 F. App'x at 225. Accordingly, statutory damages and pre-judgment interest are inappropriate here.

Additionally, neither party is entitled to attorneys' fees under ERISA § 1132(g)(1). To begin with, Plaintiff cannot recover attorneys' fees because, as discussed *supra*, Plaintiff has not obtained any "degree of success on the merits" in this case. *Hardt v. Reliance*, 560 U.S. 242, 244 (2010). Further, attorneys' fees are not appropriate for either party on the facts of this case because application of the five-factor test for attorneys' fees makes clear that neither party deserves such an award. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030 (4th Cir. 1993); *Cox v.*

---

[16] Moreover, many of these cases are further distinguishable because they involve a husband who willfully violated a temporary restraining order or settlement agreement that precluded him from disinheriting his spouse. *See, e.g.*, *Irwin v. Principal Life Ins.*, No. 04-cv-4052, 2005 WL 3470359, *12 (D. Kan. Dec. 16, 2005); *Cent. States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 675 (6th Cir. 2000).

*Reliance Standard Life Ins. Co.*, 179 F. Supp. 2d 630, 633 (E.D. Va. 2001).  The five factors to address when considering a request for attorneys' fees under ERISA § 1132(g)(1) are: (1) "the degree of opposing party's culpability or bad faith"; (2) "the ability of the opposing party to satisfy an award of attorneys' fees"; (3) "whether an award of attorneys' fees would deter other persons acting under similar circumstances;" (4) "whether the party requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself"; and (5) "the relative merits of the parties' positions."  *Cox*, 179 F. Supp. 2d at 633 (citing *Quesinberry*, 987 F.2d at 1030).  In this regard, attorneys' fees are not appropriate for either party because (1) Plaintiff did not act in bad faith by bringing this lawsuit and the appropriate remedy for Hamill and Webb's breach of fiduciary duty will be considered separately, (2) neither party has put forth any evidence about either parties' ability to pay attorneys' fees, (3) neither party has argued that attorneys' fees are necessary to deter persons from filing similar lawsuits, (4) neither party has brought this lawsuit on behalf of all Plan beneficiaries and this lawsuit does not resolve significant legal questions under ERISA, and (5) both parties had a legitimate factual and legal basis for the positions taken in this lawsuit.  Accordingly, neither statutory damages nor attorneys' fees will be awarded here.

## V.

In conclusion, for the reasons set forth above, Plaintiff's requests for (1) recovery of the funds in Decedent's 401(k) Plan under ERISA § 1132(a)(1)(B), (2) equitable relief under ERISA § 1132(a)(3) in the form of reformation or creation of a constructive trust, and (3) statutory damages, pre-judgment interest, and attorneys' fees all must be denied.[17]  For the reasons set forth

---

[17] Because neither party has sought a decision on whether de la Vega is the "spouse" entitled to the funds in Decedent's 401(k) Plan, this Memorandum Opinion does not expressly reach that issue.  This Memorandum Opinion concludes only that Plaintiff has no valid claim to the funds in Decedent's 401(k) Plan on the basis of this record.

above, Defendants' request for attorneys' fees also must be denied.

An appropriate Order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
October 30, 2020

/s/
_____
T. S. Ellis, III
United States District Judge

20